**ILLINOIS FARMERS INSURANCE COMPANY, Respondent,**

v.

**The LEAGUE OF MINNESOTA CITIES INSURANCE TRUST, Appellant.**

No. C9–00–499.

Court of Appeals of Minnesota.

Sept. 19, 2000.

Joseph G. Twomey, Hansen, Dordell, Bradt, Odlaug & Bradt, PLLP, St. Paul, MN (for respondent).

Mark J. Condon, Johnson & Condon, P.A., Minneapolis, MN (for appellant).

Considered and decided by TOUSSAINT, Chief Judge, HARTEN, Judge, and HUSPENI *, Judge.

## OPINION

HARTEN, Judge

A bookmobile patron injured by falling from a stationary bookmobile brought an action against respondent, her insurer, for No–Fault benefits. A district court found respondent liable. Respondent then brought this action against appellant, the bookmobile's insurer, for reimbursement pursuant to Minn.Stat. § 65B.47, subd. 1 (1998). The district court found appellant liable to respondent. Because we hold that a stationary bookmobile is not a vehicle being used in the business of transporting persons or property within the meaning of Minn.Stat. § 65B.47, subd. 1, we reverse and remand with directions that the district court order summary judgment for appellant.

## FACTS

Beatrice Sandefur was injured when she alighted from a stationary bookmobile owned by the City of Rochester and insured by appellant League of Minnesota Cities Insurance Trust. Sandefur sued her insurer, respondent Illinois Farmers Insurance Company, for No–Fault benefits. The district court determined that respondent was liable because Sandefur's injuries arose out of the use of a motor

vehicle. Respondent did not appeal from this determination but stipulated to judgment for $25,000 in settlement of the No–Fault claim.

Respondent then sued appellant for reimbursement of the $25,000 pursuant to Minn.Stat. § 65B.47, subd. 1 (1998), providing that if an accident occurs "while the vehicle is being used in the business of transporting persons or property" the vehicle's insurer is security for the injured party's No–Fault benefits. The parties brought cross-motions for summary judgment. The district court determined that, at the time of Sandefur's injury, the bookmobile was in the business of transporting persons and property and ordered judgment for respondent.

## ISSUE[1]

Was the bookmobile being used in the business of transporting persons and property within the meaning of Minn.Stat. § 65B.47, subd. 1 (1998)?

## ANALYSIS

"Insurance coverage issues are questions of law for the court." *State Farm Ins. Co. v. Seefeld,* 481 N.W.2d 62, 64 (Minn.1992) (citation omitted). Statutory construction is a question of law that this court reviews de novo. *Sorenson v. St. Paul Ramsey Med. Ctr.,* 457 N.W.2d 188, 190 (Minn.1990).

Minn.Stat. § 65B.47, subd. 1 (1998) provides:

In case of injury to the driver or other occupant of a motor vehicle, if the accident causing the injury occurs while the vehicle is being used in the business of

---

* *Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.*

1. Appellant raises a second issue on appeal, arguing that because Sandefur's injury did not arise out of the maintenance or use of a motor vehicle, she was not entitled to No–Fault benefits from respondent. A district court previously determined that Sandefur's

injury did arise out of the maintenance or use of a motor vehicle and that she was entitled to No–Fault benefits from respondent. Respondent did not appeal from that determination. Because our determination of the section 65B.47, subd. 1, issue is dispositive, even assuming appellant's second issue is viable, we need not address it.

transporting persons or property, the security for payment of basic economic loss benefits is the security covering the vehicle * * *.

The district court concluded that the bookmobile was "being used in the business of transporting persons or property" when the accident occurred. None of the three cases construing Minn.Stat. § 65B.47, subd. 1, supports that conclusion.

*Dakota Fire Ins. Co. v. Hartford Fire Ins. Co.,* 558 N.W.2d 524 (Minn.App.1997) held that a van rented from a transportation service company to transport students on a field trip was "being used in the business of transporting persons or property" when an accident occurred on the field trip. *Id.* at 526.

Regardless of whether [the transportation service company] supplied the driver (or saw to other details of the transport), the van was being used in the business of transporting people when the accident occurred. * * *

* * * *

This case falls more clearly within the statutory meaning of "being used in the business of transporting persons or property." Especially when considering the rationale behind the statute—requiring those in the transportation business to bear the risks as a cost of business—it makes sense that the van would be considered to be in use in the business of transporting persons.

*Id.* at 526–27 (footnote omitted). *Dakota Fire* is clearly distinguishable; in the instant case, no income stream derived from use of the bookmobile. Moreover, holding a bookmobile liable for No–Fault benefits to an injured patron would not achieve the statutory purpose of "requiring those *in the transportation business* to bear the risks * * *[.]" *Id.,* (emphasis added).

*Peterson v. Colonial Ins. of California,* 493 N.W.2d 152, 153 (Minn.App.1992) held that "a motor vehicle being used for under-cover police work is not being used in the

business of transporting persons or property * * *."

The fact that a vehicle is used in connection with a person's occupation is insufficient by itself to make this provision applicable. The use to which the vehicle is being put must be the *business of transporting* persons or property. This implies more than transporting a driver, or a driver's companion. That is a tangential connection between the use of the motor vehicle and a person's occupation. Such a tangential connection is all that is present here.

We hold the vehicle involved in this accident was not being used in the business of transporting persons or property. The car was being used in undercover police work, not a transportation business.

*Id.* at 154–55 (footnotes omitted). The bookmobile here was being used as a library; like the car in *Peterson,* it was not being used in a transportation business.

*Home Mutual Ins. Co. v. Snyder,* 356 N.W.2d 780 (Minn.App.1984) held that the statute applied to a truck used by a farmer to deliver potatoes. "[The farmer] was clearly using the truck in the business of transporting potatoes to his outlets in Iowa." *Home Mutual,* 356 N.W.2d at 785. As is *Dakota Farmer, Home Mutual* is readily distinguishable. Here, the bookmobile was not transporting books to retail outlets, nor was any income derived from its operation.

*See also Mutual Service Casualty Ins. Co. v. Wilson Township,* 603 N.W.2d 151, 153–54 (Minn.App.1999) (construing "in the business of" in an insurance policy as a phrase "commonly understood to refer to a commercial enterprise or activity"), *review denied* (Minn. Mar. 14, 2000); Minn.Stat. § 645.08(1) (1998) ("Words and phrases are construed * * * according to their common and approved usage * * *."). The bookmobile was not a commercial enterprise or activity; its revenue was fines for overdue books; citizens did not pay to use it; neither the bookmobile nor its asso-

ciated library system made a profit. The bookmobile was not in the business of transporting persons or property as that phrase is construed according to common and approved usage.

## DECISION

The Rochester bookmobile was not a vehicle being used in the business of transporting persons or property within the meaning of Minn.Stat. § 65B.47, subd. 1. Appellant is not the security for Sandefur's No–Fault benefits and, upon remand, is entitled to summary judgment accordingly.

**Reversed and remanded.**

DORIS O. HUSPENI, Judge (concurring specially).

I agree with the majority that the bookmobile was not a vehicle being used in the business of transporting persons or property within the meaning of Minn.Stat. § 65B.47, subd. 1. I write separately only to identify a second, independent basis for reversal, in the event further appellate review calls into question the basis relied upon by the majority.[2]

Before both the district court and this court, appellant has argued that Sandefur's injury did not arise out of the maintenance or use of a motor vehicle. Respondent concedes that, despite an earlier, unappealed, trial court ruling to the contrary in the action between Sandefur and respondent, appellant may raise this issue in the present action between these two insurers. In the interest of fully addressing all issues raised, I would reach the question of whether Sandefur's injury arose out of the maintenance or use of a motor vehicle, and answer that it did not.

As noted in *Marklund v. Farm Bureau Mut. Ins. Co.,* 400 N.W.2d 337 (Minn. 1987), when addressing the policy goals of the no-fault act, "costs of injuries causally resulting from motoring activities should be allocated to the automobile reparation insurance system." *Id.* at 341. It follows, I submit, that those injuries not resulting from motoring activities should be compensated from other sources. As the majority notes, the bookmobile here was being used as a library. Sandefur's accident occurred in a library. The fact that the library "moved" before and after the accident is immaterial. There is absolutely no connection between the injury suffered and the operation or use of the bookmobile as a motor vehicle. The injury arose out of an unfortunate fall occurring in a stationary structure; a library.

Finally, appellant's argument that the injury here did not arise out of the maintenance or use of a motor vehicle is strongly supported by abundant caselaw. *See Classified Ins. Corp. v. Vodinelich,* 368 N.W.2d 921 (Minn.1985) (surviving father of two children killed by carbon monoxide exhaust fumes when mother committed suicide in her car not entitled to no-fault benefits); *Waldbillig v. State Farm Mut. Auto. Ins. Co.,* 321 N.W.2d 49 (Minn.1982) (injury sustained while attempting to start equipment on a trailer not covered under no-fault insurance); *St. Paul Fire and Marine Ins. Co. v. Sparrow,* 378 N.W.2d 12 (Minn.App.1985) (injury sustained in trailer being used as a concession stand not covered under no-fault insurance), *review denied* (Minn. Jan. 23, 1986).

The litigation between Sandefur and her insurer is at an end. She has been com-

---

**2.** In *Continental Western Ins. Co. v. Klug,* 394 N.W.2d 872 (Minn.App.1986), this court determined that an incident had not arisen out of the maintenance or use of a motor vehicle. Having so declared, we found it unnecessary to address the issue of whether that incident was "accidental." *Id.* at 877. Upon further review, the supreme court reversed this court, ruling that the incident did, in fact, arise out of the maintenance or use of a motor vehicle.

*Continental Western Ins. Co. v. Klug,* 415 N.W.2d 876, 878–79 (Minn.1987). The supreme court then remanded to this court the issue of whether the incident was an "accident" within the meaning of the statute. *Id.* at 879. Arguably, had this court addressed both prongs of the test for coverage (was it an accident, and did it arise out of the maintenance or use of a motor vehicle), remand could have been avoided.

pensated for her injury. The cost of that compensation should not, however, be borne by appellant in this case. Appellant prevails, I believe, not only because the bookmobile was not a vehicle being used in the business of transporting persons or property, but because the injury did not arise out of the maintenance or use of a motor vehicle.